IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBECCA WILSON                                                                      PLAINTIFF

     v.                                         CIVIL NO. 13-5205

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                      DEFENDANT

**MEMORANDUM OPINION**

     Plaintiff, Rebecca Wilson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I. Procedural Background**

     Plaintiff protectively filed her application for DIB on April 13, 2012, alleging an inability to work since October 3, 2011, due to depression, diabetes, neuropathy in her feet, and back and leg pain. (Tr. 20, 134-42, 178). For DIB purposes, Plaintiff maintained insured status through December 31, 2016. (Tr. 22). Her claim was initially denied on June 19, 2012, and denied upon reconsideration on October 2, 2012. (Tr. 80-82, 85-86). An administrative hearing was held on January 30, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 35-75). By a written decision dated April 19, 2013, the Administrative Law Judge ("ALJ") found that during the relevant time period, Plaintiff had the following severe impairments: hypertension, non-insulin

dependent diabetes mellitus with neuropathy, spondylosis of the lumbar spine, degenerative disc disease of the lumbar spine at the L5-S1 level, obesity, and depression. (Tr. 22, 187). After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 22). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that "she could perform work limited to simple, routine, and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes; and no more than incidental contact with coworkers, supervisors, and the general public." (Tr. 24). With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work ("PRW"), but that Plaintiff retained the capacity to perform the requirements of representative occupations such as fishing reel assembler, inspector checker weigher, and label cutting machine operator. (Tr. 27-28). The ALJ then found that Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 29).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied that request on July 26, 2012. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1).This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both Parties have filed appeal briefs, and the case is ready for decision. (Doc. 11; Doc. 12).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security Disability Benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

3

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

**IV. Discussion**

Plaintiff raises the following arguments on appeal: The ALJ (1) erred by not finding that Plaintiff meets the requirements of Listing 1.04, and (2) erred by ignoring evidence about Plaintiff's carpal tunnel syndrome ("CTS") in finding that it was not a severe impairment. (Pl. Br. at 12).

**A. Whether Plaintiff's Carpal Tunnel Syndrome Was A Severe Impairment:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).

Plaintiff argues that the ALJ should have included CTS as a severe impairment. (Pl. Br. at 15-19). After a positive nerve conduction study and a positive Phalen's test, Plaintiff was diagnosed with bilateral CTS by Dr. Mark Powell in December 2007. (Tr. 469-472, 467). She

was instructed to wear a Velcro splint, and advised that carpal tunnel release surgery was an option. (Tr. 467).

In her disability application, Plaintiff did not include CTS as a basis for her disability. (Tr. 134-42, 178). The record reflects that, after her diagnosis in 2007, Plaintiff did not seek treatment. She testified at her hearing that she had numbness in her left hand but said, "it's not too bad as long as I watch what I'm doing." (Tr. 60-61). She also testified that she did not have surgery for financial reasons. (Tr. 61).

The fact that Plaintiff did not include CTS as a basis for her disability is significant even though she developed the issue in her testimony. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). There is also no evidence that she had functional limitations from CTS. She did not mention CTS to her physicians or seek treatment after 2007, which indicated that her CTS was not a disabling condition. Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995); Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007). Plaintiff did not acknowledge that she had a condition that affected her use of her hands when prompted by a query in her Function Report Questionnaire. (Tr. 203). In her Function Report, she mentioned that her impairments affected the amount of time she could spend on a computer, but she attributed her limitations to back pain, not CTS. (Tr. 47-48). Plaintiff indicated instead that she played a lot of video games, and wrote, "good at video games now, unable to do much else." (Tr. 202). These activities are not consistent with a disabling CTS condition. See Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). Based on her daily activities, lack of treatment, and her lapse in alleging a CTS condition,

there was substantial evidence for the ALJ to conclude that her CTS was not a severe impairment.[1]

Plaintiff also argues that the ALJ failed to acknowledge or appropriately weight Dr. Powell's opinion, which is the reason the ALJ did not include CTS as a severe impairment. (Pl. Br. at 15-17). The ALJ noted the records from Dr. Powell, but did not discuss Dr. Powell's diagnosis in detail. (Tr. 25). Dr. Powell only saw Plaintiff on one visit before Plaintiff discontinued treatment. The visit occurred in 2007, well before the relevant time period. There was no obligation for the ALJ to assign a weight to this piece of evidence because the visit with Dr. Powell was not close to the relevant time period, and the single visit did not establish a treating relationship. Although evidence outside of the relevant time period can support or illuminate the severity of a condition, it is not determinative by itself. See Pyland v. Apfel, 149 F.3d 873, 878 (8th Cir. 1998). There was also no duty to discuss the evidence in detail because the record did not show Plaintiff's CTS condition to be a severe impairment. The ALJ's duty to discuss such evidence, therefore, was minimized. See Salts v. Sullivan, 958 F.2d 840, 844 (8th Cir. 1992).

**B. Whether Plaintiff's Back Impairment Met A Listing:**

"The claimant has the burden of proving that her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir.

---

[1] Even assuming that the ALJ should have included CTS as an additional severe impairment in Step Two, the error is harmless since the ALJ found at least one severe impairment and considered all impairments, including those that were not severe, in his analysis. See Maziarz v. Secretary of Health and Human Servs. 837 F.2d 240, 244 (6th Cir. 1987).

2010). "To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" Id. at 594, (quoting from Sullivan v. Zebley, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)). "When determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

Plaintiff argues that she meets the requirements of Listing 1.04, which specifies the following criteria:

> Listing 1.04 - Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

The record reflects that Plaintiff had a history of treatment for back pain and was prescribed a long list of pain medications. (Tr. 255, 258, 261, 264, 267, 270, 273, 276, 279). She was primarily treated by Dr. Cathy Luo, who noted in July 2011 that Plaintiff had "middle back pain that radiates all the way down and sciatic pain that radiates down her legs." On multiple

visits in 2010 and 2011, Dr. Luo assessed positive straight leg tests and noted decreased range of motion in Plaintiff's lumbar spine. (Tr. 252, 253, 256, 259, 262, 265, 268, 271, 274, 277, 280). Plaintiff was eventually referred to Dr. James Blankenship, a neurologist, and underwent an MRI of her spine on July 20, 2011. The results, in pertinent part, were as follows:

> L3-L4: Mild facet arthropathy is noted with mild lateral recesses without significant neural impingement.
> L4-L5: Marked facet arthropathy with lateral recess stenosis with **mild impingement of the L5 nerve root bilaterally**. A posterior disk bulge eccentric off to the right results in a **slightly more significant neural compression** with mild proximal L4 neural foraminal narrowing.
> L5-S1: Mild Facet arthropathy is noted with mild lateral recess stenosis without significant neural impingement. (Tr. 289-290)(emphasis added).

An x-ray of her spine on July 25, 2011, also indicated mild segmental instability at the L4-L5 level. (Tr. 288).

On September 8, 2011, Dr. Blankenship reviewed the x-ray and MRI results and characterized Plaintiff's back condition as consistent with L5 radiculopathy. Dr. Blankenship found that the x-ray and MRI of her spine demonstrated an annular tear with posterior disk herniation, along with kyphosis with forward angulation and flattening of the spine. (Tr. 285). He wrote, "[she] has marked collapse of the anterior disc space in flexion and opening up, but still not completely in extension ... indicative of moderate segmental instability. [She] has moderate to severe lateral recess stenosis at the L4-L5 level." (Tr. 285-296). Dr. Blankenship assessed that the existence of a posterior annular tear, in addition to disc protrusion and stenosis, made it unlikely that a simple decompression procedure would benefit Plaintiff. He also opined that a partial facetectomy might adequately decompress the proximal L4 nerve root, but it would lead to further destablization. Dr. Blankenship instead advised Plaintiff that she should have an

extreme lateral interbody fusion ("XLIF") procedure combined with a posterior decompression procedure. (Tr. 286).

Defendant did not address Plaintiff's argument other than noting that Plaintiff had a normal gait, which would preclude her from meeting the 1.04(C) Listing. (Def. Br. at 7). Plaintiff's normal gait is relevant to Listing 1.04(C), but not Listing 1.04(A) or 1.04(B).

In his decision, the ALJ discussed Plaintiff's back pain, pain management treatment, and the opinion of Dr. Blankenship, but noted that she "reported pain relief with medications and sleeping on an ice pack," and concluded that her "spondylosis and degenerative disc disease ... are not severe to a degree that would limit activities beyond the scope of the RFC." (Tr. 26). The ALJ did not discuss whether her spinal condition met or medically equaled an impairment listing at Step Two.

Since there was a diagnosis of nerve root compression as well as evidence that Plaintiff had decreased range of motion, positive straight leg tests, and neuro-anatomic distribution of pain, the ALJ should have more carefully considered and more thoroughly addressed whether Plaintiff's back impairment met a listing. The Court finds that there was not substantial evidence to support the ALJ's decision. Remand is necessary in order for the ALJ to more carefully consider and address Plaintiff's back impairment in light of the nerve root compression diagnosed by Dr. Blankenship. On remand, the ALJ should obtain a Physical RFC Assessment from an examining physician.

**C. Conclusion:**

Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence, and, therefore, the denial of benefits to the Plaintiff should be reversed and this matter

should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 9th day of December 2014.

                                                *s/ Erin L. Setser*
                                                HON. ERIN L. SETSER
                                                UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)